SENIOR HOUSING PROPERTIES TRUST & another[1] vs.
HEALTHSOUTH CORPORATION (and a companion case[2]).

Suffolk. March 7, 2006. - July 17, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Practice, Civil,* Jury trial, Transfer of action to Superior Court, Waiver, Judicial discretion. *Rules of Civil Procedure. Jury and Jurors.*

The defendant in a Land Court proceeding waived its right to a trial by jury on its counterclaim by failing to comply with the requirement of G. L. c. 185, § 15, that it file a statement of framed jury issues within thirty days after the service of the last pleading directed to such issues, which in this case was the plaintiff's answer to the defendant's counterclaim [266-270]; in light of the mandatory language of the statute, a judge in the Land Court abused his discretion in invoking the provisions of Mass. R. Civ. P. 39 (b), 365 Mass. 801 (1974), to revive the defendant's right to a trial by jury on its counterclaim [270-273].

CIVIL ACTIONS commenced in the Land Court Department on February 3, 2003, and April 16, 2003.

After consolidation, a demand for jury trial was heard by *Keith C. Long,* J.

An application for leave to prosecute an interlocutory appeal was allowed in the Appeals Court by *Mel L. Greenberg,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul B. Galvani* (*Jane E. Willis* with him) for Senior Housing Properties Trust & another.

*Philip Y. Brown* (*Brian R. Birke* with him) for HRPT Properties Trust.

*Gary R. Greenberg* (*Jonathan D. Cohen* with him) for Greenery Securities Corporation & another.

[1]HRES1 Properties Trust. HRES1 Properties Trust is a wholly-owned entity of Senior Housing Properties Trust. For ease of reference, we use the term "Senior Housing" to refer to both trusts.

[2]HRPT Properties Trust vs. Senior Residential Care/North Andover, Limited Partnership.

MARSHALL, C.J. This appeal arises from consolidated cases pending in the Land Court among various trusts and corporate entities and their subsidiaries concerning the sale and lease back arrangements of five nursing homes and two rehabilitation hospitals located in the Commonwealth. At issue is whether a judge in the Land Court may invoke the provisions of Mass. R. Civ. P. 39 (b), 365 Mass. 801 (1974), to revive a right to a trial by jury that has been waived for failure to comply with the procedures set forth in G. L. c. 185, § 15. That statute provides, in part, that failure to enter in the Superior Court (within a specified period) questions that have been "framed" in the Land Court "shall constitute a waiver of the claim to a trial by jury, and thereafter the superior court shall have no further jurisdiction of the case."[3]

In this case a judge in the Land Court concluded that the defendant, HealthSouth Corporation (HealthSouth), failed to comply with the requirements of G. L. c. 185, § 15, and consequently had waived its right to a jury trial. Invoking rule 39 (b), the judge then ruled, as a matter of discretion, that HealthSouth "may have a jury trial on all issues so triable." The judge denied the plaintiffs' subsequent request that he report

---

[3]General Laws c. 185, § 15, provides in pertinent part:

"Except as provided in [§ 16], all cases in the land court shall be tried and all questions of fact finally determined by the court, unless a timely demand for jury trial is made. In actions which are governed by the Massachusetts Rules of Civil Procedure such demand shall be made in accordance with said Rules. In all other actions the defendant with his answer or a plaintiff within ten days after the time limited by law for filing an appearance and answer, or within ten days after the time allowed by the court for filing an answer, may claim a trial by jury. If trial by jury is claimed, issues therefor upon any material question of fact shall be framed in the land court, and within thirty days after the expiration of time for claiming a trial by jury, except as otherwise provided in [§ 16] and in [G. L. c. 237], copies thereof and of all other material papers in the case, certified by the recorder, shall be entered by the moving party in the superior court for the county where the land lies for a jury trial thereon. Failure to enter the copies and papers required by this section or [§ 16] or by [G. L. c. 237, § 23,] within the times limited by said sections, respectively, shall constitute a waiver of the claim to a trial by jury, and thereafter the superior court shall have no further jurisdiction of the case."

Neither G. L. c. 185, § 16, which applies to appeals from a judgment for a jury trial, nor G. L. c. 237, relating to writs of entry, applies in this case.

his order to the Appeals Court pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996). The plaintiffs petitioned for interlocutory relief, G. L. c. 231, § 118, first par., and a single justice of the Appeals Court granted leave to pursue an interlocutory appeal from the judge's order. We transferred the case here on our own motion. We affirm so much of the judge's order as ruled that HealthSouth waived its right to a jury trial and reverse so much of his order as granted Health-South the right to a jury trial in the Superior Court.

1. *Background.* The plaintiffs, Senior Housing and HRPT Properties Trust (HRPT Trust), are real estate investment trusts that own and lease commercial real estate, including nursing homes and hospitals. HealthSouth is a health care services provider that owns and leases medical facilities to conduct its operations. For disputed reasons not relevant to our decision, in January, 2002, HealthSouth and Senior Housing restructured their existing financial arrangements and entered into a new "Exchange Agreement" whereby HealthSouth conveyed two rehabilitation hospitals to Senior Housing and Senior Housing conveyed five nursing homes to HealthSouth. By separate agreement signed the same day, HealthSouth leased the two hospitals from Senior Housing, with an option to purchase.[4] HealthSouth subsequently conveyed one of the five nursing homes it had purchased, a skilled nursing facility in North Andover, to Senior Residential Care/North Andover, Limited Partnership (Senior Residential Care).[5]

The Land Court cases arose from these transactions: the first,

---

[4]Previously, by lease dated February 11, 1994, HealthSouth had leased the five nursing homes from HRPT Trust. The lease was set to expire on January 1, 2006. At some point between 1994 and 2002 (the record is not clear), Senior Housing acquired the five nursing homes from HRPT Trust.

As part of the 2002 property exchange and lease back agreement between HealthSouth and Senior Housing, the 1994 lease was amended. The January, 2002, amended lease agreement substituted the two rehabilitation hospitals, now owned by Senior Housing, as the lease property. In addition, the amended lease agreement made the following changes to the 1994 lease: (1) the lease term was extended from 2006 to 2011; (2) annual rent was reduced from $10.3 million to $8.7 million; and (3) HealthSouth's purchase option exercise date was extended and the price reduced from $80.3 million to $40 million.

[5]Senior Residential Care/North Andover, Limited Partnership, is a codefendant in one of the Land Court cases. It did not request a trial by jury and is not a party to this appeal.

which we shall refer to as the parking lot case, was initiated by HRPT Trust, and the second, which we shall refer to as the lease reformation case, was commenced by Senior Housing. We review the procedural history of both cases in some detail as it is relevant to our analysis of G. L. c. 185, § 15.

On February 3, 2003, HRPT Trust commenced an action against Senior Residential Care to quiet title, pursuant to G. L. c. 240, §§ 1-10,[6] claiming that Senior Residential Care was wrongfully using a parking lot and buildings owned by HRPT Trust in North Andover adjacent to one of the skilled nursing facilities involved in the 2002 transaction between Senior Housing and HealthSouth. HRPT Trust also sought declaratory relief, remedies for trespass and ejectment, and damages. On March 18, 2003, pursuant to Mass. R. Civ. P. 24, 365 Mass. 769 (1974), HealthSouth filed a motion to intervene in the parking lot case and filed a complaint and a jury demand, naming Senior Housing and HRPT Trust as defendants (rule 24 complaint).[7] Health-South advanced claims of breach of contract, breach of implied covenant of good faith and fair dealing, reformation, fraud, negligent misrepresentation, civil conspiracy, and violations of G. L. c. 93A, alleging that it had acquired the disputed property in North Andover under the January, 2002, exchange agreement with Senior Housing, and that, during negotiations, Senior Housing had misrepresented that it was the record owner of the disputed property, when HRPT Trust was its actual owner.[8] On June 2, 2003, Senior Housing and HRPT Trust, represented by the same counsel, filed a joint answer to HealthSouth's rule 24 complaint, together with a demand for a jury trial.[9]

Meanwhile, on April 16, 2003, Senior Housing had commenced a separate action in the Land Court against HealthSouth

---

[6]Such claims are within the exclusive original jurisdiction of the Land Court. See G. L. c. 185, § 1 (*g*).

[7]On June 2, 2003, Senior Housing and HRPT Trust assented to Health-South's motion to intervene.

[8]HealthSouth alleges that Senior Housing and HRPT Trust are "related by common ownership and control." Senior Housing and HRPT Trust deny this allegation.

[9]The answer was dated and served on June 2, 2003, but the court docket reflects its filing on September 16, 2003. HealthSouth has not challenged that it was served on June 2, 2003, and we therefore use that date as is necessary for our analysis.

(lease reformation case), alleging that HealthSouth's chief financial officer had misrepresented its creditworthiness during the January, 2002, lease negotiations,[10] and that its creditworthiness was a "primary factor" on which the 2002 amended lease agreement was based. Senior Housing sought reformation of the lease.[11] On May 23, 2003, HealthSouth filed its answer as well as counterclaims in the lease reformation case, together with a demand for a jury trial.[12] On July 11, 2003, HealthSouth's motion to consolidate the two cases was allowed. Mass. R. Civ. P. 42 (a), as amended, 423 Mass. 1402 (1996). Thereafter, on September 16, 2003, Senior Housing only, now represented by separate counsel, filed an answer to HealthSouth's counterclaims in the lease reformation case.[13] There matters stood. Of relevance to this case, no party framed jury trial issues in the Land Court or filed a statement of jury issues in the Superior Court. See G. L. c. 185, § 15.

Six months later, on March 12, 2004, Senior Housing moved to amend its complaint in the lease reformation case, which was allowed on September 22, 2004.[14] On November 2, 2004, Health-South filed its answer to the amended complaint. It once again asserted counterclaims against both Senior Housing and HRPT

[10]In March, 2003, the Securities and Exchange Commission filed an action against HealthSouth claiming that from 1997 to 2001 HealthSouth falsified its financial statements. As a result, the New York Stock Exchange delisted HealthSouth's securities, and the company's investment grade ratings were cancelled.

[11]The complaint alleged that jurisdiction and venue in the Land Court were proper, pursuant to G. L. c. 185, § 1 (k), which provides for concurrent jurisdiction of the Land Court and Superior Court of "matters cognizable under the general principles of equity jurisprudence where any right, title or interest in land is involved."

[12]HealthSouth's factual allegations and counterclaims were the same as those raised in its complaint pursuant to Mass. R. Civ. P. 24, 365 Mass. 769 (1974) (rule 24 complaint), in the parking lot case. See text accompanying note 8, *supra*.

[13]Although HealthSouth's May 23, 2003, answer and counterclaims named HRPT Trust as a counterclaim defendant, the docket does not reflect a summons showing service on HRPT Trust. HRPT Trust did not file a responsive pleading, nor did HealthSouth move to compel or default.

[14]In addition to reformation of the lease, the amended complaint now sought rescission and avoidance of the lease, and damages for fraud.

Trust, and made a demand for a jury trial.[15] Senior Housing (but again not HRPT Trust) filed an answer to HealthSouth's amended counterclaims on November 22, 2004.

On December 3, 2004, a case management conference was scheduled. By this date no party had filed a statement of jury issues as required by G. L. c. 185, § 15. In response to a claim of Senior Housing that HealthSouth had waived its right to a jury trial, the judge in the Land Court invited all parties to submit statements on that question, which Senior Housing and Health-South did on December 20, 2004.[16] Senior Housing acknowledged that HealthSouth had made a jury demand no "later than 10 days after the service of the last pleading directed to such issue," in accordance with Mass. R. Civ. P. 38 (b), 365 Mass. 800 (1974), pointing to HealthSouth's demand for a jury trial filed with its first answer and counterclaims on May 23, 2003. Senior Housing argued, however, that HealthSouth had thereafter waived its right to a jury trial by failing to file a statement of jury issues in the Superior Court "within thirty days after the expiration of the time for claiming a trial by jury," as required by G. L. c. 185, § 15.[17] HealthSouth countered that, while

[15]The counterclaims were identical to the earlier filed claims and counterclaims, see notes 8 and 12, *supra*, and accompanying text, with the following exceptions. HealthSouth added six new paragraphs of factual allegations relating to its agreement to sell the North Andover skilled nursing facility to Senior Residential Care. See note 5, *supra*, and accompanying text. In those six paragraphs HealthSouth described its damages resulting from the property dispute with HRPT Trust in the parking lot case, viz.: because HealthSouth was unable to convey title to the disputed property by May 31, 2003, Senior Residential Care exercised its right under its purchase and sale agreement with HealthSouth to close the nursing home and reconvey the facility back to HealthSouth. HealthSouth alleged that, under the terms of the agreement, Senior Residential Care was then entitled to receive from Health-South the purchase price for the reconveyance ($2,066,250), costs incurred in closing the nursing home ($400,000), and reimbursement for certain capital improvements. HealthSouth further alleged as damages its carrying costs (over $30,000 a month) for maintaining, securing, insuring, and paying property taxes on the North Andover skilled nursing facility, which it claimed was not marketable due to the nonconveyance of the disputed property.

[16]Attached to Senior Housing's statement was a letter from its counsel advising the judge that she had spoken with counsel for HRPT Trust, and that HRPT Trust "joins in this statement and will not be filing anything additional."

[17]In its written submission to the Land Court, Senior Housing did not

Senior Housing had responded to its November 2, 2004, amended counterclaims, HRPT Trust had not yet done so, and that accordingly the ten-day period for HealthSouth to demand a jury trial had not yet started to run, nor had the thirty-day period for filing the statement of jury issues in the Superior Court been triggered.

On January 27, 2005, HRPT Trust filed its statement on the question. Noting that HealthSouth's November, 2004, claims against it were exactly the same as HealthSouth's allegations against it in HealthSouth's March, 2003, rule 24 complaint, which HRPT Trust had previously answered, HRPT Trust argued that its answer filed on June 2, 2003, in response to Health-South's rule 24 complaint, constituted its response to Health-South's claims; that a response to HealthSouth's November, 2004, counterclaims would be duplicative; and that HealthSouth had waived its right to a jury trial by failing to comply with the requirements of G. L. c. 185, § 15.[18] On March 16, 2005, in response to HealthSouth's motion to compel it to do so,[19] HRPT Trust filed an answer to HealthSouth's November 2, 2004, counterclaims. On April 12, 2005, for the first time, Health-South filed in the Land Court a motion to frame the jury issues, which HRPT Trust opposed.

On May 13, 2005, the Land Court judge issued his ruling on the jury trial issue. He concluded that the deadline for Health-

identify with specificity the date within which (in its view) HealthSouth was required to file a statement of the jury issues, arguing only that "HealthSouth has filed no such documentation with the Superior Court during the 21 months these cases have been pending." According to the judge's subsequent order, Senior Housing argued (presumably at a hearing on the question) that the time for claiming a jury trial expired ten days after it served its response to Health-South's original counterclaims (September 16, 2003), or, at the latest, after HealthSouth served its response to Senior Housing's amended complaint (November 2, 2004). Under this logic, the thirty-day period began to run on either September 26, 2003, or November 12, 2004, and expired on either October 26, 2003, or December 12, 2004 (ten days after the last pleading, and thirty days thereafter).

[18]HRPT Trust argued that the time for claiming a jury trial expired on June 12, 2003, ten days after HRPT Trust answered HealthSouth's rule 24 complaint on June 2, 2003. See note 9, *supra*. Under this reasoning, the thirty-day period for HealthSouth to file in the Superior Court would have expired on July 12, 2003, thirty days following ten days after the last pleading.

[19]HealthSouth moved to compel HRPT Trust to answer its counterclaims on March 11, 2005.

South to file its statement of jury issues in the Superior Court as required by G. L. c. 185, § 15, had expired "long before April 12, 2005," and that HealthSouth had waived its right to a jury trial. The judge then stated that he was exercising his discretion under rule 39 (b) to order a jury trial[20] because application of G. L. c. 185, § 15, he said, would work a "grave injustice" on HealthSouth.[21]

2. *Waiver of claim to a trial by jury.* The Legislature has determined that, for cases commenced in the Land Court in which a timely demand for a jury trial is made, the Superior Court is the appropriate forum to try the jury issues. See G. L. c. 185, § 15. See also G. L. c. 185, § 25 (Land Court "shall hold no trials by jury"); *Weld* v. *Clarke*, 215 Mass. 324, 325 (1913). As to such cases, G. L. c. 185, § 15, lays out a two-step procedure for perfecting a timely demand for a jury trial. First, a party must make a jury demand "in accordance with" rule 38 (b) (party must "serv[e] upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue").[22] See G. L. c. 185, § 15. As to that step, Senior Housing and HRPT Trust readily agree that

---

[20]Rule 39 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 801 (1974), provides: "Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by jury of any or all issues."

[21]The judge reasoned that this case did not fit within the "model" presupposed by G. L. c. 185, § 15, because in his words it did not involve "well-defined issues, apparent from the outset, that can be carved out, decided discretely, and then reinserted into the Land Court proceedings." He also noted that HealthSouth's inclusion of a timely jury demand in all of its responsive pleadings demonstrated its clear intent, from the beginning of the litigation, to assert its jury trial right. Finally, the judge stated that the pleadings were not complete until March 16, 2005, when HRPT Trust filed its answer to HealthSouth's November 2, 2004, counterclaims, and noted that his finding that the issues in this final pleading were not new "may not have been as clear to [HealthSouth] as it was to [the judge]," and that "the situation was, from [HealthSouth's] perspective, at best ambiguous."

[22]The Massachusetts Rules of Civil Procedure govern Land Court proceedings, see Mass. R. Civ. P. 1, as appearing in 423 Mass. 1404 (1996). No exclusions under Mass. R. Civ. P. 81, as amended, 423 Mass. 1412 (1996), are applicable to this case.

HealthSouth made a timely jury demand in its rule 24 complaint filed on March 18, 2003, and in its answer and counterclaims filed on May 23, 2003.

Second, the jury issues "shall be framed" in the Land Court, and the party requesting a jury trial "shall" file a statement of framed issues and "all other material papers in the case" in the Superior Court "within thirty days after the expiration of the time for claiming a trial by jury." G. L. c. 185, § 15. The thirty-day period commences ten days after "service of the last pleading directed to such issue." Mass. R. Civ. P. 38 (b). Failure to comply with the second step "shall constitute a waiver" of the claim to a trial by jury. G. L. c. 185, § 15. The dispute in this case turns on whether HealthSouth satisfied the second step. That question in turn is resolved by identifying the "last pleading directed to such issue." Mass. R. Civ. P. 38 (b).

Senior Housing argues that the relevant "last pleading" was its answer to HealthSouth's counterclaims, filed on September 16, 2003. HealthSouth responds that the relevant "last pleading" was HRPT Trust's March 16, 2005, answer to Health-South's amended counterclaims, and that the thirty-day period did not begin to run until March 26, 2005.[23] For several reasons we conclude that HealthSouth did not satisfy the requirements of G. L. c. 185, § 15, and has therefore waived its right to a jury trial.

First, an amended pleading does not extend the time for demanding a jury trial, nor does it revive a right to a jury trial that has been waived, unless the amendment contains new issues not presented in the original pleadings. See *Dole* v. *Wooldredge*, 142 Mass. 161, 180-182 (1886); *Pyramid Co. of Holyoke* v. *Homeplace Stores Two, Inc.*, 175 F.R.D. 415, 418 (D.

---

[23]HealthSouth also argues that its motion to intervene was never formally allowed and that, therefore, HRPT Trust's answer to HealthSouth's rule 24 complaint, see note 9, *supra*, could not have been the relevant "last pleading." This argument fails. Senior Housing and HRPT Trust assented to Health-South's motion to intervene on June 2, 2003. Furthermore, the judge treated HealthSouth as a party in allowing its motion to consolidate in July, 2003, and in his September 22, 2004, order allowing Senior Housing's motion to amend its complaint, by noting that HealthSouth had intervened. Finally, if carried to its logical conclusion, this argument would serve to preclude HealthSouth's standing in the parking lot case to argue these issues before this court.

Mass. 1997); J.W. Smith, H.B. Zobel, & C.S. Murphy, Rules Practice § 38.3, at 12 (Supp. 2006). See also *Sharon* v. *Newton*, 437 Mass. 99, 101-103 (2002) (in negligence action, amended answer, which raised additional affirmative defense of release based on document that defendant came across during course of discovery, did not raise new issue); *Communications Maintenance, Inc.* v. *Motorola, Inc.*, 761 F.2d 1202, 1208 (7th Cir. 1985), quoting *Connecticut Gen. Life Ins. Co.* v. *Breslin*, 332 F.2d 928, 931 (5th Cir. 1964) (it is "well-settled law" that supplemental pleadings do not extend time for making demand for jury trial "except as to new issues raised by the new pleadings," interpreting Federal Rules of Civil Procedure); *In re N-500L Cases*, 691 F.2d 15, 23 (1st Cir. 1982) ("One issue is the same as another when it is based on the same conduct or concerns the same general area of dispute"); *Lanza* v. *Drexel & Co.*, 479 F.2d 1277, 1310-1311 (2d Cir. 1973) (amended complaint, which added new claim and sought punitive damages, raised no new issues where "same conduct and same allegedly false documents" constituted basis for all claims and defendant "had been put on notice of the underlying facts and basic legal theory — fraud — upon which plaintiffs sought relief").

In these cases, none of the 2004 amended pleadings of the parties raised "new" issues. Senior Housing's motion to file the amended complaint makes this clear: its 2004 amendments supplemented its existing claim of fraud by HealthSouth by seeking "additional or alternative remedies" available under applicable law for its claim of fraud and "amplify[ing]" that claim "by alleging additional facts."[24] Cf. *Lanza* v. *Drexel & Co., supra.* The various claims and responsive counterclaims asserted by HealthSouth did not change, see notes 8, 12, and ac-

---

[24] If a complaint seeking only equitable relief is later amended to seek money damages, a jury demand as to the legal issue may then be made. See J.W. Smith, H.B. Zobel, & C.S. Murphy, Rules Practice § 38.3, at 12 (Supp. 2006). Senior Housing's 2004 amended complaint added a claim for damages, while its original complaint had a claim for reformation of the lease only. However, the core issues remained the same. In any event, giving HealthSouth every benefit of the doubt, it should have moved to frame the jury issues as to that one issue no later than December 12, 2004 (ten days after HealthSouth filed its November 2, 2004, amended counterclaims, plus thirty days).

companying text, *supra,* and its November, 2004, amended answer and counterclaim do nothing more than elaborate its damages. See note 15, *supra.* See *Pyramid Co. of Holyoke* v. *Homeplace Stores Two, Inc., supra* at 419-420 (as it was based on same factual claim, amendment of answer to assert counterclaim for first time did not revive waived right to jury trial); *Berisford Capital Corp.* v. *Syncom Corp.,* 650 F. Supp. 999, 1001-1002 (S.D.N.Y. 1987) (amended complaint does not revive waived jury right unless it "raises issues not fairly present in the original complaint"; court will look to "the underlying essence of the two complaints to see if they differ, rather than focusing on the fine-tuning of legal theories or the artful sharpening of allegations").

Second, and perhaps more telling, after the initial round of pleadings were completed on September 16, 2003, HealthSouth should have perfected its jury claim by filing its statement of framed issues in the Superior Court on or before October 26, 2003. It did not do so, thereby waiving its demand for a jury trial. HealthSouth could not have predicted that Senior Housing would file a motion to amend its complaint many months later on March 12, 2004.[25] Cf. *Communications Maintenance, Inc.* v. *Motorola, Inc., supra* (court must decide at what point "the pleadings finally framed the various issues to be put before the trier-of-fact; that is, when did the pleadings cease raising new factual issues, and begin simply alleging new legal theories or particularized facts"). Had Senior Housing's amended complaint of March, 2004, raised "new" issues, which it did not, Health-South could have filed an amended motion to frame, had one been necessary. See note 24, *supra.*

By strong affirmative language the Legislature has directed that the Superior Court shall lose jurisdiction of a case if a party making a jury demand does not timely file framed jury issues in the Superior Court. This reflects a legislative response

---

[25]It is significant that when HealthSouth finally moved to frame jury issues in April, 2005, it recited only issues raised in the 2003 pleadings: whether Senior Housing and HRPT Trust are liable for fraud, breach of contract, breach of implied covenant of good faith and fair dealing, civil conspiracy, or negligent misrepresentation arising out of the failure to convey title to the disputed property in North Andover; and if they are liable under any of these theories, what is the proper amount of damages.

to the complexity of having a single case proceed in two separate trial court departments at the same time, the Land Court and the Superior Court. It is not unreasonable to expect parties to comply assiduously with the requirements of the statute in order to secure the greatest possible efficiency in the administration of these complex parallel proceedings. Once the pleadings are complete, a party that has made a timely demand for a jury trial must promptly assess the case in its entirety and determine whether to proceed in the Land Court alone, thereby forgoing its right to a jury, or whether to proceed in the Superior Court with its jury claims and the attendant expense of two trials, one in the Land Court and one in the Superior Court. The Legislature no doubt anticipated that a party might make a timely demand for a jury trial, and then (once the pleadings were complete) decide to forgo its right to a jury because of the costs and delay involved. Compliance with the statutory mandate places on a party the obligation of making that determination as soon as possible, permitting a considered but efficient process for trying appropriate issues to a jury in the Superior Court for cases commenced in the Land Court. As the judge in the Land Court noted, G. L. c. 185, § 15, requires the framing of jury issues in the Land Court "at a point very near the beginning of a case." HealthSouth knew no later than September, 2003, that it had equitable and legal claims against Senior Housing and HRPT Trust. It would defy a plain reading of the statute to conclude that, by waiting until April, 2005, to frame the issues in the Land Court, it has complied with its obligations under G. L. c. 185, § 15.

3. *Judicial discretion to revive right to a jury trial.* Rule 39 (b) grants "discretion upon motion" to a judge to "order a trial by jury of any or all issues" where a party had a right to a jury trial but failed to demand one.[26] A judge's discretion under rule 39 (b) to order a jury trial is "largely unlimited." Reporters' Notes to Mass. R. Civ. P. 39 (b), Mass. Ann. Laws, Rules of Civil Procedure at 649 (LexisNexis 2005), citing former G. L. c. 231,

---

[26]The Massachusetts Rules of Civil Procedure apply in this case. See note 22, *supra*. The docket does not reflect that HealthSouth filed a motion requesting that the judge exercise his discretion, as required by rule 39 (b). In its December 20, 2004, statement on the issue of waiver, HealthSouth did argue that the judge had the authority under rule 39 (b) to order a jury trial.

§ 60; *Gechijian* v. *Richmond Ins. Co.*, 305 Mass. 132, 143-144 (1940) (after plaintiff waived jury trial right in stipulation, judge's granting of jury trial under former G. L. c. 231, § 60, reviewed for abuse of discretion). See, e.g., *Dolan* v. *Boott Cotton Mills*, 185 Mass. 576, 577-578 (1904) (judge has power to extend time for demanding jury trial). Here, however, the judge's exercise of discretion must be considered in light of G. L. c. 185, § 15, which provides that the jury issues "shall be framed" in the Land Court and "shall be entered" in the Superior Court within a specifically defined time, and that failure to do so "shall" constitute a waiver of a claim to a trial by jury, which "shall" divest the Superior Court of further jurisdiction over the case.[27]

It requires little parsing of the mandatory language of G. L. c. 185, § 15, to recognize that it is irreconcilable with the discretionary language of rule 39 (b). And where there is an irreconcilable conflict between a court rule and a statute, the rule generally must yield to the statute. See *Eastern Energy Corp.* v. *Energy Facilities Siting Bd.*, 419 Mass. 151, 154-155 (1994) (rejecting plaintiff's request to apply Mass. R. A. P. 4 [a], as amended, 395 Mass. 1110 [1985], to salvage its untimely appeal, where rule "would contradict the provisions of G. L. c. 25, § 5, which specifically govern the timing of appeals"); *Friedman* v. *Board of Registration in Med.*, 414 Mass. 663, 665 (1993) ("statutory appeal period . . . cannot be overridden by a contrary rule of court when the manner and time for effective filing of an appeal are delineated in the statute"); *Harper* v. *Division of Water Pollution Control*, 412 Mass. 464, 465-466

---

[27]HealthSouth argues that the plaintiffs waived the argument that rule 39 (b) did not authorize the judge to exercise discretion in the context of G. L. c. 185, § 15. Specifically, HealthSouth claims that because Senior Housing agreed in the Land Court that the Massachusetts Rules of Civil Procedure apply to this case, and because HRPT Trust raised the issue only in a footnote in a reply to the judge, they did not preserve the issue for appeal. These arguments are unavailing. The judge ruled on the exact issue. Moreover, in their requests that the judge report his order to the Appeals Court, pursuant to Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), the plaintiffs argued that the judge could not exercise his discretion under rule 39 (b) to circumvent the clear mandate of the statute. Cf. *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 386 Mass. 64, 67-68 (1982) (where issue not raised for first time on appeal and judge ruled on issue, plaintiffs had right to argue issue on appeal).

(1992) (same); *LaRoche* v. *Flynn*, 55 Mass. App. Ct. 419, 421 (2002) ("a court rule generally may not override a statute"). Cf. *Garrett* v. *Director of the Div. of Employment Sec.*, 394 Mass. 417, 419 (1985) (purpose of Mass. R. Civ. P. 81 [d], 365 Mass. 841 [1974], which provides that "[i]n applying these rules to any proceedings to which they apply, the terminology of any statute which also applies shall, if inconsistent with these rules, be taken to mean the analogous device or procedure proper under these rules," is not to make rules of civil procedure paramount to express statutory language).[28]

Contrary to HealthSouth's argument, exercise of discretion pursuant to rule 39 (b) cannot be harmonized with the explicit command of G. L. c. 185, § 15: the language of the statute is mandatory.[29] See *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983) ("'shall' is ordinarily interpreted as having a mandatory or

---

[28]HealthSouth's reliance on *Boston Seaman's Friend Soc'y, Inc.* v. *Attorney Gen.*, 379 Mass. 414 (1980), is misplaced. In that case, the plaintiff filed a notice of appeal more than thirty, but less than sixty, days after entry of judgment in the Probate and Family Court, and the question was which appeal period was applicable: the thirty-day period found in G. L. c. 215, § 9, or the sixty-day period found in Mass. R. A. P. 4, 365 Mass. 846 (1974). *Boston Seaman's Friend Soc'y, Inc.* v. *Attorney Gen.*, supra at 415. This court held that the sixty-day period in the rule applied, and therefore the appeal was timely. *Id.* at 416. The statutory section in question, G. L. c. 215, § 9, was immediately followed by G. L. c. 215, § 10, which specified that the statute "shall be in accordance with the Massachusetts Rules of Appellate Procedure." *Id.* See G. L. c. 215, § 10. Of particular significance was that the statute "was adopted as part of a comprehensive legislative and judicial effort to coordinate statutes of the Commonwealth and rules of this court." *Boston Seaman's Friend Soc'y, Inc.* v. *Attorney Gen.*, supra.

In contrast, G. L. c. 185, § 15, was enacted in 1898 as part of the legislation creating the Court of Registration, St. 1898, c. 562, §§ 1-2, 14, which later became the Land Court, St. 1900, c. 354, § 1; St. 1904, c. 448, § 10, not as part of a comprehensive effort to reconcile statutes with the rules of civil procedure. General Laws c. 185, § 15, was not repealed when the Massachusetts Rules of Civil Procedure were adopted. See, e.g., St. 1973, c. 1114, § 178 (repealing G. L. c. 231, § 60, which formerly granted discretion to judge to extend time for demanding jury trial).

[29]The Land Court judge implicitly recognized that the statute and the rule are incompatible. In a footnote in his order, the judge warned that his exercise of discretion in these cases "should not be misinterpreted as an indication of my rulings in future cases. In the future, I will expect parties seeking a jury trial to bring a timely motion pursuant to G. L. c. 185, § 15, even if the early 'issue framing' it requires may be thought inappropriate. . . . Should such a motion not be brought within the time required by G. L. c. 185, § 15, I will

imperative obligation"); *Johnson* v. *District Attorney for the N. Dist.*, 342 Mass. 212, 215 (1961) (use of "shall" in statute is "inconsistent with the idea of discretion"). Rather, G. L. c. 185, § 15, limits a Land Court judge's otherwise broad discretion to act under rule 39 (b), and we see no reason why the explicit language of the statute should be ignored.[30] See *McGrath* v. *Lynch*, 323 Mass. 151, 152 (1948) (affirming judge's decision to strike claim for jury trial where plaintiff's demand was not timely under G. L. c. 185, § 15, despite fact that jury demand would have been timely under G. L. c. 231, § 60; Legislature "did not intend to substitute the procedure set up in § 60 for that in § 15"). See also note 28, *supra*; Reporters' Notes to Mass. R. Civ. P. 39 (b), Mass. Ann. Laws, Rules of Civil Procedure at 649 (LexisNexis 2005), citing former G. L. c. 231, § 60.

For all of these reasons we affirm so much of the judge's order that ruled that HealthSouth waived its right to a jury trial because it failed to comply with the requirements of G. L. c. 185, § 15, and vacate so much of the judge's order that granted HealthSouth the right to a jury trial in the Superior Court.

*So ordered.*

---

deem it a waiver of the right to a jury trial."

[30]We reject the suggestion by the Land Court judge that it was appropriate for HealthSouth to delay framing the jury issues in the Land Court because the issues that needed to be decided by the jury would "only become clear after discovery is concluded, pretrial motions decided, and the parties and the court have had the benefit of a pretrial conference." The Legislature has established the procedure applicable to cases pending in the Land Court where there has been a timely demand for a jury trial. The obvious purpose is to remove to the Superior Court as soon as possible all of the jury-based claims. This case is a telling example of why early removal to the Superior Court, which can manage all discovery and pretrial issues, is in the interests of a fair administration of justice. As the Land Court judge noted, "at heart" the disputes among these parties are contract disputes, not land disputes. Had HealthSouth met its requirements under the statute, the jury issues would have been framed and filed in the Superior Court no later than October, 2003. Some three years later the litigants are still awaiting their day in court. *That* is the issue which has, in the judge's words, "significant case management implications."