Hand, J.
In these consolidated cases, three otherwise-unrelated patients, J.B., E.J., and E.E. (collectively, “Patients”), each appeal the trial court’s denial of his waiver of a hearing, pursuant to G.L.c. 123, §6(b), on Bridgewater State Hospital’s (“Bridgewater”) petition to commit him.[2] Patient E.E. further argues that, as Bridgewater “will realize precisely the same result it had sought in the Trial Court regardless of the resolution of the instant matter,” and therefore can suffer no legally cognizable injury as a consequence of its inability to argue on E.E.’s appeal, Bridgewater lacks standing to appear and argue as to him. We agree with the Patients to the extent that they argue that the trial court lacked the discretion to decline their knowing and voluntary waivers of their commitment hearings, pursuant to G.L.c. 123, §6(b), and vacate the ruling denying each patienfs waiver. We *234 determine, with respect to E.E.’s argument, that Bridgewater has standing to argue on his appeal.
Each patient was, at the time relevant to his appeal, confined to Bridgewater. In each patient’s case, Bridgewater sought commitment; with respect to each commitment, the patient subject to Bridgewater’s commitment petition was entitled, pursuant to G.L.c. 123, §7 (c), to a hearing.[3] General Laws c. 123, §6 (b), however, authorizes the subject of a commitment petition to waive the required commitment hearing, provided he or she does so “in writing ... after consultation with his counsel.” The court may then commit the subject of the petition to Bridgewater if the petition is facially adequate, i.e., if the petition shows that the person is mentally ill, is not a proper subject for commitment to any facility of the Department of Mental Health, and that the failure to retain the person in strict security would create a likelihood of serious harm. G.L.c. 123, §8(f). Having waived the otherwise-mandatory commitment hearing, the person committed “may request a hearing for good cause shown at any time during the period of commitment.” G.L.c. 123, §6(b).
Each patient did, after consultation with his attorney, make a written waiver of his right to a hearing on Bridgewater’s petition for commitment as to him. In each case, Bridgewater objected to the patient’s waiver.[4] In each instance, the trial judge *235 declined to accept the waiver, although apparently out of an interest in ensuring that a sufficient evidentiary basis existed for each patient’s commitment, and that the waiver at issue was made knowingly, intelligently, and voluntarily, and not for the reasons argued by Bridgewater.[5] The Patients appeal each of those denials.
The Patients argue that the trial court lacks the authority to deny a person’s waiver of his right to a commitment hearing under G.L.c. 123, §7 (c), provided the waiv *236 er meets the requirements of §6(b) of the same statute and is otherwise proper.[6]’[7] We agree. The plain language of §6(b) requires that a hearing be held “unless waived in writing by the person after consultation with his counsel.” Given that a mental health commitment “represents ‘a massive curtailment of liberty,’” Matter of Molina, 2007 Mass. App. Div. 21, 22, quoting Commonwealth v. Nassar, 380 Mass. 908, 917 (1980), we are required to construe the governing law strictly. See, e.g., Hashimi v. Kalil, 388 Mass. 607, 609-610 (1983) (statute authorizing restraint of personal liberty is strictly construed); Karjavainen v. Buswell, 289 Mass. 419, 426 (1935) (“It is plain that any statute is to be strictly construed which purports to authorize a person or an officer of government to restrain for any length of time a person in the exercise of his personal liberty.”); Commonwealth v. Beck, 187 Mass. 15, 17 (1904) (same). There is no language in §6, or in any other provision of G.L.c. 123, that grants the court the authority to reject a proper waiver. The language of the statute is clear and unambiguous, and we give the words of the statute their plain meaning. *237 See Martha’s Vineyard Land Bank Comm’n v. Board of Assessors of West Tisbury, 62 Mass. App. Ct. 25, 27-28 (2004) (‘“Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent,’ Pyle v. School Comm. of S. Hadley, 423 Mass. 283, 285 (1996), and ‘the courts enforce the statute according to its [plain] wording,’ Weitzel v. Travelers Ins. Cos., 417 Mass. 149, 153 (1994), which “‘we are constrained to follow” ... [so long as] its application would not lead to an “absurd result.” ...’ Commissioner of Rev. v. Cargill, Inc., 429 Mass. 79, 82 (1999), quoting from White v. Boston, 428 Mass. 250, 253 (1998).”). See also Welch v. Sudbury Youth Soccer Ass’n, Inc., 453 Mass. 352, 355 (2009) (‘Words are to be accorded their ordinary meaning and approved usage. See Pyle v. School Comm. of S. Hadley, 423 Mass. 283, 286 (1996). Where, as here, the language of a statute is clear and unambiguous, it is conclusive as to the intent of the Legislature.”). The language of the statute is not discretionary; if the subject of the petition malees a proper waiver of his right to a hearing on the petition, the court is required to accept it.
E.E.’s additional argument that Bridgewater lacks standing to be heard with respect to his appeal turns on whether Bridgewater suffered “a legally cognizable injury within the area of concern of the statute at issue.” Entergy Nuclear Generation Co. v. Department of Envtl. Protection, 459 Mass. 319, 326 (2011), citing Massachusetts Ass’n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 292 (1977).
Our courts view standing “as an issue of subject matter jurisdiction.” Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998), citing Doe v. The Governor, 381 Mass. 702, 705 (1980). “From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government.” Kaplan v. Bowker, 333 Mass. 455, 459 (1956). ‘To have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury.” Slama v. Attorney Gen., 384 Mass. 620, 624 (1981), citing Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208 (1974), and Tileston v. Ullman, 318 U.S. 44 (1943). Put another way, in order to have standing to litigate an action, the prospective litigant must have “a definite interest in the matters in contention,” such that the prospective party’s rights “will be significantly affected by a resolution of the contested point.” Bonan v. City of Boston, 398 Mass. 315, 320 (1986), citing Massachusetts Ass’n of Indep. Ins. Agents & Brokers, Inc., supra at 292, and School Comm. of Cambridge v. Superintendent of Sch. of Cambridge, 320 Mass. 516, 518 (1946).
E.E. contends that Bridgewater cannot show the requisite injury because “ [w]hen the Trial Court denied [E.E.’s] waiver [pursuant to §6 (b) ], Bridgewater remained in the very same position as if no waiver had been sought.” This statement is correct, but does not take into account the effect of our decision on this appeal. The parties here do not seriously dispute the facial adequacy of Bridgewater’s petition to commit E.E. Our decision here expresses our conclusion that a trial judge does not have the discretion to reject an otherwise-proper waiver, pursuant to G.L.c. 123, §6(b), of a person’s right to a commitment hearing under §§7, 8, and 18. In every case in which Bridgewater presents a facially adequate commitment petition under one of these sections, and in which the patient makes a proper waiver of that hearing pur *238 suant to §6(b), the patient may be committed, but if so, will be committed with an option the patient otherwise would not have: the ability to seek, on a showing of good cause, a hearing at another point along the commitment continuum. G.L.c. 123, §6(b). Bridgewater is obviously required to document and present evidence about the basis for each of its commitment petitions; it cannot claim injury in having to fulfill those responsibilities. Bridgewater’s standing arises from the ability of any patient in E.E.’s position, postwaiver, to require Bridgewater to prepare for and participate in a hearing on short notice and at the patient’s election, and on the effect that this will certainly have on Bridgewater’s ability to control the resources needed to prepare for the hearings essentially on the patient’s demand. Bridgewater’s resources are not infinite, and its scheduling constraints are real. While, as the first part of this decision suggests, those concerns do not give Bridgewater a basis to object to a proper waiver of a commitment hearing, they do demonstrate why Bridgewater has a voice in this appeal. This decision will likely have an unwelcome effect on Bridgewater’s ability to schedule and plan for commitment hearings in the way most advantageous to the hospital and its staff. Accordingly, it has standing to be heard on this appeal.
The refusal to accept the patient’s waiver is vacated in each case. The waivers are deemed accepted, and the dockets should reflect that the commitments are based on the waivers.

 The petitions relating to appellants J.B. and E.E. were filed pursuant to G.L.c. 123, §18(a); the petition concerning EJ. was brought under §§7 and 8 of the same statute.

 General Laws c. 123, §7 provides, in relevant part, as follows:
(b) The medical director of the Bridgewater state hospital... may petition the district court... in whose jurisdiction the facility or hospital is located for the commitment to the Bridgewater state hospital of any male patient at said ... hospital when it is determined that the failure to hospitalize in strict security would create a likelihood of serious harm by reason of mental illness.
(c) Whenever a court receives a petition filed under any provisions of this chapter for an order of commitment of a person to a facility or to the Bridgewater state hospital, such court shall notify the person, and his nearest relative or guardian, of the receipt of such petition and of the date a hearing on such petition is to be held. The hearing on a petition brought for commitment pursuant to... sections 16 and 18, or for a subsequent commitment pursuant to paragraph (d) of section 8 shall be commenced within 14 days of the filing of the petition, unless a delay is requested by the person or his counsel. For all other persons, the hearing shall be commenced within 5 days of the filing of the petition, unless a delay is requested by the person or his counsel.

 The bases for Bridgewater’s objections were identical in each case, and included arguing that such waivers had not been granted in prior Bridgewater commitment hearings; and that the consequences of granting the waivers in each of these cases would include depriving interested parties in hearing the evidence concerning the commitment determination, would result in uncertainty about whether and when witness preparation would be required in each case, and in requiring already-overworked Bridgewater clinicians to conduct “substantially more” risk assessments, and would further burden an already-crowded Bridgewater hearing list.

 Hearings on the commitment petitions for J.B. and for E.J. were scheduled for the same day. The transcripts of these hearings make it clear that the trial judge rejected any argument that she could decline the patients’ waivers of their commitment hearings based on concerns about the burden that would then fall on Bridgewater; the judge’s concerns were obviously in ensuring that the court protect the patients’ interests in avoiding improper restrictions on their liberty. At the hearing on E.J.’s waiver, the trial judge explicitly rejected any argument that the waiver could be refused on the ground that its acceptance was “burdensome” on Bridgewater. The judge’s written findings supporting her denial of E.J.’s waiver were, “This court finds that I need to hear live testimony in order to determine whether [Bridgewater] has met its burden of proof BRD [beyond reasonable doubt].” With respect to E.E.’s waiver, the same judge wrote, “Denied. This court needs to hear testimony to make an informed decision re: commitment.” The transcript of the hearing in J.B.’s case shows that the trial judge was concerned about her ability to assess, on a colloquy alone, whether J.B. was capable of making a knowing and voluntary waiver of his right to the hearing. We address this issue below.f
The trial judge’s concern about the knowing and voluntary quality of the Patients’ waivers, which the judge raised explicitly in J.B.’s case, was apt. A civil commitment “constitutes a significant deprivation of liberty that requires due process protection.” Addington v. Texas, 441 U.S. 418, 425 (1979), citing Jackson v. Indiana, 406 U.S. 715 (1972), Humphrey v. Cady, 405 U.S. 504 (1972), In re Gault, 387 U.S. 1 (1967), and. Spechtv. Patterson, 386 U.S. 605 (1967) (discussing inadequacy of preponderance of the evidence standard in civil commitment proceeding). See Andrews, petitioner, 368 Mass. 468, 486 (1975) (commitment based on adjudication that person is sexually dangerous requires due process protection, including requirement of proof beyond a reasonable doubt). Accordingly, any waiver of a person’s right to contest commitment must be made knowingly and voluntarily. See, e.g., Commonwealth v. Sayyid, 86 Mass. App. Ct. 479, 488 (2014), quoting United States v. Correa-Torres, 326 F.3d 18, 22 (1st Cir. 2003) (discussing waiver of right to probation revocation hearing, Court stated, “As a general proposition,... the waiver of virtually any right closely affecting individual liberty must be knowingly and voluntarily made.”); Matter of Laura L., 54 Mass. App. Ct. 853, 861 (2002) (waiver of privilege as to statements, where statements may be used as basis for commitment of patient, must be made knowingly and voluntarily). In these appeals, no party has raised an issue about whether the waivers at issue were knowing and voluntary. We do not treat the issue here, other than to underscore the fact that the court may not accept a waiver of a commitment hearing if that waiver is not knowingly and voluntarily made.

 Bridgewater points us to the following portion of the Commentary to Standard 3:00 of the District Court Standards of Judicial Practice: Civil Commitment and Authorization of Medical Treatment for Mental Illness (2011), arguing that this segment “underscores the discretionary nature of waiver when it states: ‘After a petition is filed, some respondents may waive a hearing pursuant to Section 6(b). The court may then allow the commitment if the petition shows on its face that each of the criteria for commitment is met.’” The full text of that section of the Commentary, however, is this:
After a petition is filed, some respondents may waive a hearing pursuant to G.L.c. 123, §6(b). The court may then allow the commitment if the petition shows on its face that each of the criteria for commitment is met. G.L.c. 123, §8(e) (commitment to a facility) or (f) (commitment to Bridgewater State Hospital). For that reason, a petitioner should include in the petition, in the space provided on the form or in appended pages, brief but specific factual assertions in support of the petition, demonstrating that each commitment criterion is met.
Commentary to Standard 3:00.
This portion of the Commentary clearly addresses the information to be included in a petition for commitment in order to survive facial review in the event of a patient’s §6(b) waiver of a commitment hearing. It does not, as Bridgewater contends, suggest that the Standard gives the judge discretion to refuse a conforming waiver.

 We appreciate the undisputed fact that the prerequisites to a valid waiver are, in the context of these appeals, (1) that the petition for that commitment be facially adequate, see G.L.c. 123, §8(f), and (2) that the waiver be voluntary, knowing, and intelligent. Cf. Matter of Laura L, supra at 860 (waiver of Lamb warnings must be knowing and voluntary). See also R.B. MINEHAN & R.M. KANTROWITZ, MENTAL HEALTH LAW §8.33, at 276 (2007) (“[T]he suggested practice is for the Court to determine that the person is competent to waive the hearing.”).